The HUDSON CITY SAVINGS INSTITUTION, Plaintiff,

v.

HARTFORD ACCIDENT AND INDEMNITY COMPANY, Defendant.

No. 73–C–573.

United States District Court,
E. D. New York.

Nov. 18, 1977.

Joseph W. Ryan, Jr., of Carlino & Pearsall, Mineola, N. Y., for plaintiff.

Hart & Hume, New York City, for defendant.

## MEMORANDUM DECISION

COSTANTINO, District Judge.

This is an action by plaintiff bank to recover from defendant insurance company for a loss covered by the terms of an insurance policy issued by the defendant. The full amount of the loss, which plaintiff claims it is entitled to recover, was $500,882. Defendant claims that under the terms of one of the riders to the insurance policy, its liability is limited to $50,000.

There is no dispute as to the basic facts of the case. Plaintiff employed several mortgage servicing contractors to collect the monthly payments owed on the mortgages held by the bank. After collecting the payments, the contractors were to forward the principal and interest to the bank and pay the taxes to the appropriate taxing authorities. The loss was suffered when John D. Roake and Son, Inc. ("Roake"), one of the servicing contractors, over a period of time embezzled that portion of the monies collected that was to be used to pay real estate taxes. The embezzlement was discovered when several homeowners contacted the bank to complain that they had received foreclosure notices for failure to pay real estate taxes. In order to avoid foreclosure, the bank paid the taxes, in the amount of $500,882, and filed a claim with the defendant. Defendant, believing that its liability was limited to $50,000, tendered that amount. The bank refused the tender and this lawsuit followed.

In seeking to limit its liability, defendant claims that the loss suffered by plaintiff falls within the terms of the Service Contractors Rider to the insurance policy. That rider provides, in pertinent part, that:

1. The attached bond is hereby amended by adding an additional Insuring Clause as follows:

Servicing Contractors

A. Any loss through any fraudulent or dishonest act or acts committed by any Servicing Contractor, as hereinafter defined, acting alone or in collusion with others.

B. Any loss of money . . . collected or received for the account of the Insured by any such Servicing Contractor through the failure of such Servicing Contractor to pay to the Insured the Money so collected or received as is discovered to be due and payable during the term of this bond, except, however, such Money as may be disbursed by such Servicing Contractor in accordance with instructions from the Insured.

\*    \*    \*    \*    \*    \*

5. The total liability of the Underwriter under the foregoing Service Contractors Insuring Clause, with respect to any loss or losses sustained at any time . . . is limited to the sum of Fifty Thousand and No/100 Dollars ($50,000.00), it being understood, however, that such liability shall be a part of and not in addition to the amount of the attached bond. . .

Plaintiff, on the other hand, argues that the loss is not covered by the rider since it falls within the exception to clause 1B of the rider. Plaintiff contends, therefore, that it is covered for the full amount of the loss under the "Fraud" Clause (Clause 5) of the main policy, which provides coverage for "[a]ny loss of Property through any other form of fraud or dishonesty by any person or persons, whether Employees or not."

The sole issue before the court is the construction to be given to the insurance policy and the rider. In order for the defendant to prevail, it must show that an

interpretation favoring it is the only reasonable reading of the rider. *Cf. Pan American World Airways, Inc. v. Aetna Casualty & Surety Co.*, 505 F.2d 989, 1000 (2d Cir. 1974). Conversely, plaintiff will prevail if it can show any reasonable interpretation of the terms of the policy and rider to permit coverage. *Id.* And any ambiguous or unclear terms in the policy or rider will be given the interpretation which is most beneficial to the insured. *Id.*, at 999.

■ Plaintiff, in seeking to hold defendant liable for the full amount of the loss, makes two arguments. First, it claims that the loss falls clearly within the exception to clause 1B of the rider. Second, plaintiff contends that, at best, the exception clause in clause 1B of the rider is ambiguous, and that since any ambiguity must be resolved in favor of the insured, *see Pan American World Airways v. Aetna Casualty & Surety Co., supra* at 999, plaintiff is entitled to recover the entire amount of the loss. Both of plaintiff's arguments are without merit.

Clause 1A of the rider provides coverage for *any* loss through *any* fraudulent or dishonest act of a servicing contractor, and the defendant's liability for any loss covered by clause 1A is limited by clause 5 of the rider to $50,000. The loss here was caused by the fraudulent act of one of plaintiff's servicing contractors, and is therefore covered by clause 1A. Plaintiff seeks to avoid the clear language of clause 1A, however, by arguing that clause 1B "defines" the loss in clause 1A, Plaintiff's Post-Trial Memorandum, at 9, and that therefore the exception in clause 1B also applies to losses clearly covered by clause 1A.

The court cannot accept plaintiff's interpretation of the rider. Plaintiff relies on the phrase "as hereinafter defined" in clause 1A to support its contention that clause 1B defines the loss referred to in clause 1A. There can be no doubt, however, that the phrase "as hereinafter defined" refers to the term "Servicing Contractor," which immediately precedes it, and which is defined in detail in clause 1B. Moreover, clause 1B, which refers to *any*

loss, is significantly broader than clause 1A, which refers to any loss by *fraud,* and clause 1B cannot, therefore, reasonably be read as "defining" clause 1A.

Arguably, a loss caused by the fraudulent act of a servicing contractor, clearly covered by clause 1A, could also be covered by the broader language of clause 1B. If clause 1B were intended to cover losses due to fraud, however, clause 1A, dealing specifically with losses due to fraud, would be totally unnecessary and superfluous. The court must assume that clause 1A was included in the rider to accomplish some purpose, and that it is not an idle provision. *Appleman on Insurance,* § 7383. Likewise, the court must not adopt a construction which would neutralize clause 1A if the policy can be construed to give effect to that, and every other, provision. *Id.* Accordingly, the court finds that clause 1A was intended to cover losses due to the fraudulent acts of a servicing contractor, and that clause 1B was not intended to cover losses specifically covered by clause 1A.

Plaintiff's second argument—that the language of the exception to clause 1B is ambiguous—need not be decided by the court at this time. Since the loss here is covered in clear and unambiguous language by clause 1A of the rider, any ambiguity in clause 1B would have no bearing on defendant's liability in this case.

■ Plaintiff's contention that the loss here is covered by the "Fraud" clause of the main policy is unpersuasive for several reasons. First, the Servicing Contractors rider begins by stating that the main policy is amended by *adding* an *additional* insuring clause. Thus, the parties must have understood that servicing contractors were not covered under the main policy. This conclusion is reinforced by the fact that prior to 1956, when the servicing contractors rider was promulgated, losses due to a servicing contractor's dishonesty were covered not under the main policy, but under an agents' rider or a separate bond. (Tr. 43, 73–74). Thus, it appears that losses such as that here have never been covered under the main policy.

**44**

Second, if the parties intended for losses due to the fraud of servicing contractors to be covered under the main policy, there would have been no necessity whatsoever to include clause 1A in the servicing contractors rider. Again, since the court must construe the policy, if possible, so as to give effect to all its provisions, *see supra*, it must assume that clause 1A was included in the rider because losses specifically covered by that clause were not covered elsewhere in the policy.

Third, the "Fraud" clause of the main policy provides coverage for "any *other* form of fraud or dishonesty by any person or persons . . . ." (emphasis added) The word "other" can have only one meaning when taken in context; that is, that the clause covers losses caused by types of fraud not enumerated elsewhere in the policy. The Servicing Contractors rider was issued at the same time as the original main policy, and has always been an integral part of the policy. Since the policy must be construed as a whole, *Appleman on Insurance* § 7383, the court concludes that the fraud and dishonesty of a servicing contractor is not "any *other* form of fraud or dishonesty", which would be covered by the "Fraud" clause of the main policy, but is rather a specifically enumerated form of fraud which is specifically covered by clause 1A of the rider.

In light of the foregoing discussion, the court finds that the loss here is covered only by the Servicing Contractors rider, that the loss is covered in clear and unambiguous language by clause 1A of that rider, and that defendant's liability is therefore limited to $50,000.

The foregoing shall constitute the court's Findings of Fact and Conclusions of Law.

So ordered.